# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINJIE ZHENG,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS; and VERISIGN, INC.,<br><br>　　　　　　　　Defendants. | Case No. 2:25-cv-04808-SPG-AJR<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br>**[ECF NOS. 49, 63]** |

　　　　Before the Court are the Motions to Dismiss filed by Defendants Internet Corporation for Assigned Names and Numbers ("ICANN") and Verisign, Inc. ("Verisign," or, together with ICANN, "Defendants"). (ECF No. 49 ("ICANN Motion"); ECF No. 63 ("Verisign Motion," or, together with the ICANN Motion, the "Motions")). The Court has read and considered the Motions and concluded that they are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motions.

## I. BACKGROUND

### A. Factual Background

ICANN is a California nonprofit public benefit corporation that oversees the technical coordination of the Internet's domain-name system. (ICANN Mot. at 10). ICANN enters into agreements with third-party registry operators to manage "top-level domains." Verisign is the registry operator of the .COM domain. (Verisign Mot. at 11).

The following allegations are taken from Plaintiff Minjie Zheng's ("Plaintiff") First Amended Complaint ("FAC"). *See* (ECF No. 10 ("FAC")). On May 25, 2001, ICANN and Verisign signed a domain name agreement, which established that domain names would be allocated on a first-come, first-serve basis and that registrants would be prohibited from stockpiling domain names. (*Id.* at 4). The agreement contained numerous reserved domain names that Defendants agreed would not be registered, including all one-character and two-character domain names that had not been previously assigned. (*Id.* at 5).

In 2008, Plaintiff applied to register 67 "single character domain names," including website domains such as "a.com" and "a.net." (*Id.* at 2). Plaintiff subsequently submitted similar applications in 2015, 2019, and 2025, including an application for "cm.com." (*Id.* at 2, 9). Plaintiff's applications were denied. (*Id.* at 8-9). In response, Plaintiff initiated an anti-monopoly lawsuit in Chinese court in 2008. (*Id.* at 8). Plaintiff subsequently filed additional lawsuits in Chinese court in 2011, 2014, 2018, and 2020. (*Id.* at 2).

Since the 2001 domain name agreement, Defendants have registered many of the reserved domain names but have continued to reserve the one- and two-character domain names. (*Id.* at 15). In 2017, Defendants sought to auction off a single one-character domain name, "o.com," which required approval from the U.S. Department of Justice. (*Id.* at 10). Plaintiff states that the auction information was made confidential, and he was unable to access it. (*Id.* at 11, 19). Plaintiff alleges that Defendants' actions constitute a conspiracy to monopolize by restricting who can register domain names. (*Id.* at 3, 22). Plaintiff also alleges that Defendants violated their own reserved domain name rules by retaining

registered domain names, violating regulations prohibiting direct sales, and hoarding domain names. (*Id.* at 18-19).

Plaintiff brings claims for antitrust violations, breach of contract, unfair business practices, and declaratory relief. (*Id.* at 1). As relief, Plaintiff seeks the following: (1) a declaration that provisions in Defendants' 2024 registry agreement restricting the registration of one-character and two-character domain names are illegal; (2) a declaration that certain reservations in prior registration agreements are illegal; (3) a declaration that certain .com and .net domains have no owners; (4) an order that Defendants register these domain names for Plaintiff; and (5) expenses and mental damages totaling 35000 yuan. (*Id.* at 22).

### B. Procedural History

Plaintiff initiated this action on May 23, 2025. (ECF No. 1). Plaintiff subsequently amended his complaint on June 29, 2025. (FAC). On July 6 and 10, 2025, Plaintiff filed motions for default judgment, which the Clerk denied because no entry of default had been sought. (ECF Nos. 23-26). On July 12, 2025, following a dispute over service, Plaintiff requested sanctions against Verisign, (ECF No. 36), which the Court denied on the merits, (ECF No. 37). Plaintiff proceeded to file a "motion to confirm facto service of process" on Verisign, (ECF No. 42), which the Court again denied because Plaintiff had not filed any proof of service on the docket, (ECF Nos. 46). Plaintiff filed proof of service as to Verisign on July 23, 2025, and as to ICANN on July 30, 2025. (ECF Nos. 48, 54). Plaintiff subsequently filed three "emergency motions" to compel Verisign to disclose "attorney authorization documents," (ECF Nos. 50, 51, 55), each of which the Court denied on the merits, (ECF Nos. 57, 60).

ICANN filed its Motion on July 30, 2025. (ICANN Motion). Plaintiff filed an opposition to the Motion on July 31, 2025,[1] (ECF No. 52), and ICANN replied in support

---

[1] Following Plaintiff's initial opposition, Plaintiff filed two additional documents styled as oppositions to ICANN's Motion. *See* (ECF No. 56, 59). The Local Rules do not permit parties to file multiple opposition papers to a single motion. *See* C.D. Cal. L.R. 7-9.

of the Motion on August 13, 2025, (ECF No. 72). Verisign filed its Motion on August 8, 2025, (Verisign Mot.), accompanied by a request for judicial notice, (ECF No. 64). Plaintiff filed an opposition on August 11, 2025,[2] (ECF No. 70), and Verisign replied in support of the Motion on August 27, 2025, (ECF No. 87).

In addition to the arguments raised in his opposition briefs, Plaintiff has filed multiple procedural objections to the Motions. On August 15, 2025, Plaintiff filed a "motion to confirm ICANN's failure to fulfill negotiation obligations." (ECF No. 78). On August 28, 2025, Plaintiff filed a "motion to confirm the untimeliness of [ICANN's] motion to dismiss." (ECF No. 89). On August 29, 2025, Plaintiff filed a "motion to confirm [ICANN's] motion to dismiss as untimely," (ECF No. 92), as well as a "motion to compel Verisign to provide written confirmation of downloading the complaint on or before July 1, 2025, as promised," (ECF No. 91). And on September 5, 2025, Plaintiff filed a "motion to confirm Defendant's waiver of service defense and to strike ECF No. 63." (ECF No. 96).[3] Plaintiff also filed several procedurally deficient motions for leave to amend, one of which the Court, on its own motion, set for hearing for September 20, 2025. (ECF Nos. 81, 84).

---

Nevertheless, because ECF Numbers 52 and 56 were filed consecutively and raise complementary arguments—ECF No. 52 raises procedural arguments while ECF No. 56 raises substantive arguments—the Court will construe those two documents as Plaintiff's opposition. *See Brenner v. Indymac Bank, F.S.B*, No. 10-00113 SOM/BMK, 2010 WL 4666043, at *1 (D. Hawaii Nov. 9, 2010) (noting that "parties do not have the right to file two oppositions to the same motion," but construing the "initial and subsequent motions . . . collectively as his opposition"). The Court STRIKES the third opposition filed at ECF No. 59 as duplicative and will not consider the arguments raised therein.

[2] As with the ICANN Motion, Plaintiff filed two oppositions to the Verisign Motion. *See* (ECF Nos. 70, 76). Because the opposition at ECF No. 70 covers both substantive and procedural arguments, the Court will not construe these documents as a single opposition. The Court therefore STRIKES the opposition filed at ECF No. 76 and will not consider the arguments raised therein.

[3] The Court struck the motions at ECF Nos. 92 and 96 for attempting to set a hearing on a closed motion date. *See* (ECF No. 100).

-4-

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

### A. Plaintiff's Procedural Objections

In his oppositions to the Motions and in the five "motions" filed after briefing on the Motions had been completed, Plaintiff appears to raise three procedural objections to the

Motions. First, Plaintiff argues that Defendants failed to fulfill their negotiation obligations under Local Rule 7-3 prior to filing the Motions. Second, Plaintiff reiterates his arguments about defense counsel's authorization to represent Defendants. And third, Plaintiff argues that Defendants were effectively served as of early July 2025, such that the Motions were untimely filed.[4]

The Court rejects Plaintiff's procedural arguments. First, Defendants met their obligation to meet-and-confer under Rule 7-3. As Verisign's counsel attests in a sworn declaration, Plaintiff and Verisign met and conferred on the Motion via video conference on July 29, 2025—more than seven days prior to the filing of the Motion. *See* (ECF No. 63-1 ("Morris Declaration") ¶ 11). ICANN, meanwhile, reached out to Plaintiff on July 18, 2025, to meet regarding the instant Motion, but Plaintiff refused, citing arguments about counsel's authorization documents that the Court later rejected. *See* (ECF No. 49-1 ("Watne Declaration") ¶¶ 3, 5); *see also* (ECF No. 57).

Second, the Court has already rejected Plaintiff's arguments about defense counsel's authorization to represent Defendants. As the Court explained, in American courts, an attorney's notice of appearance "has always been received as evidence of his authority; and no additional evidence . . . has ever been required." *Osborn v. Bank of U.S.*, 22 U.S. 738, 830 (1824) (Marshall, C.J.); *see Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 446 (2000) ("[T]he act of making a court appearance on behalf of a party creates a presumption that the attorney is authorized to do so."). Defense counsel is not required to provide additional proof of their authority to represent Defendants. Plaintiff's continued insistence on this process even in the face of the Court's rejection of this argument borders on abusive.

Third, the Motions were both timely filed. As Plaintiff's own proof of service shows, Verisign and ICANN were served on July 23 and July 30, 2025, respectively. (ECF Nos. 48, 54). ICANN filed its Motion on July 30, and Verisign filed its Motion on August 8,

---

[4] Plaintiff also appears to argue at one point that Defendants are barred from filing a motion to dismiss because they previously answered the FAC. (ECF No. 56 at 2-3). Contrary to Plaintiff's argument, Defendants have not filed any prior responsive pleading.

both of which are clearly within the twenty-one-day window provided by Federal Rule of Civil Procedure 12. Plaintiff's arguments about de facto service are frivolous and have already been rejected by the Court. *See* (ECF No. 37). Regardless of whether Defendants viewed the complaint or were aware of the suit before being served, they had no obligation to appear and respond to the complaint until service was complete. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (requiring a defendant to serve an answer "within 21 days *after being served* with the summons and complaint"). The case law cited in Plaintiff's oppositions and motions appears to be largely AI-generated[5] and does not otherwise support a rule that the deadline to respond to a complaint is triggered by something other than service. Accordingly, the Court rejects Plaintiff's procedural arguments and DENIES the purported motions filed at ECF Numbers 78, 89, 91, 92, and 96.

### B. Plaintiff's Claims

The Court next turns to Defendants' argument that Plaintiff has failed to state a claim under Rule 8(a)(2). The Court will consider each of Plaintiff's claims in turn.

#### 1. Antitrust Claims

From the face of Plaintiff's FAC, the basis for Plaintiff's antitrust claim is not entirely clear. Plaintiff at one point references federal antitrust laws, (FAC at 19), but he makes no attempt to specify any theory of antitrust liability. Regardless, under either Section 1 or 2 of the Sherman Act, Plaintiff fails to state a claim.

Section 1 of the Sherman Act makes illegal "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To state a claim under § 1, a plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts

---

[5] For example, Plaintiff's opposition to ICANN's Motion, ECF No. 52, cites the following cases as support: (1) *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109960 (C.D. Cal. 2013); and (2) *Symantec Corp. v. Acronis, Inc.*, 2012 WL 12884813 (N.D. Cal. 2012). While *Perfect 10* and *Symantec* are real cases, the citations do not relate to those cases, and the Court has been unable to find any orders in those cases that support the propositions for which they are cited. In its reply brief, Verisign has provided an additional list of numerous cases cited in Plaintiff's opposition to the Verisign Motion that do not appear to exist. *See* (ECF No. 87 at 12).

which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). "Typically, the determination of whether a particular agreement in restraint of trade is unreasonable involves a factual inquiry commonly known as the 'rule of reason,'" which requires weighing the "legitimate justifications for a restraint against any anticompetitive effects." *United States v. Joyce*, 895 F.3d 673, 676 (9th Cir. 2018) (citation omitted). Courts should apply the rule of reason unless the agreement "falls into a category of agreements which have been determined to be per se illegal." *Id.* (citation omitted).

While Plaintiff has identified a series of agreements between Defendants, Plaintiff has not alleged that the agreements are per se illegal, let alone pleaded specific facts to support such an allegation. From the Court's review, based on the fact that ICANN and Verisign are not direct competitors but are instead "up and down a supply chain," the agreements appear to be "vertical agreements," which should be "analyzed under the rule of reason." *In re Musical Instruments & Equipment Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015). Under the rule of reason, Plaintiff is required to plead facts showing that the legitimate justifications for the agreement are not outweighed by its anticompetitive effects. Plaintiff here has pleaded no facts whatsoever addressing this element. Plaintiff has also failed to plead any facts about Defendants' intent or about how the agreement injured competition. *See Kendall*, 518 F.3d at 1047. Plaintiff therefore has not pleaded the basic elements of a § 1 claim.

Section 2 of the Sherman Act makes it unlawful to "monopolize, attempt to monopolize, or combine or conspire . . . to monopolize" any part of the nation's interstate or foreign commerce. 15 U.S.C. § 2. To state a claim under § 2, a plaintiff must allege "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted). "A threshold step in any antitrust case is

to accurately define the relevant market, which refers to 'the area of effective competition.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018)).

To the extent Plaintiff raises a § 2 claim, it fails at this threshold step. Plaintiff has not identified any relevant product market or geographic market, nor has he alleged that Defendants possess monopoly power within any such market. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) ("The relevant market must include both a geographic market and a product market."). To the extent the product market can be inferred from the complaint, Plaintiff fails to identify any "economic substitutes for the product" with "cross-elasticity of demand." *Id.* (citation omitted). This, by itself, is fatal to any § 2 claim. The Court will not consider the additional allegations about the relevant market that Plaintiff seeks to raise in his opposition briefing. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1198 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Accordingly, under either Section 1 or 2 of the Sherman Act, Plaintiff has failed to plead facts sufficient to state a claim for relief.

### 2. Breach of Contract

Next, Plaintiff raises a claim for breach of contract premised on Defendants' breach of their publicly stated registration policies. *See* (ECF No. 56 at 5). Under California law, a claim for breach of contract requires proof of the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015) (citation omitted).

Plaintiff's claim fails at the first step. While Plaintiff has identified a contract between ICANN and Verisign, he does not allege that he is a party to this contract with standing to sue for its breach. Rather, he argues that he "indirectly benefitted through Beijing Xinnet," and therefore qualifies as an intended beneficiary of the contract. (ECF

No. 70 at 20). As an initial matter, Plaintiff does not make any allegations as to his third-party beneficiary status in the FAC. Even if he did, however, the claim would still fail because the agreement between Defendants expressly states that it "shall not be construed to create any obligation by either ICANN or Registry Operator to any non-party to this Agreement, including any registrar or registered name holder."[6] (ECF No. 7 at 79). In the face of this express language, the Court cannot conclude that Plaintiff was intended to be a third-party beneficiary of Defendants' contract. *See GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) ("To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." (internal quotation marks and citation omitted)). Plaintiff therefore lacks standing to sue for any alleged breach of the contract between Defendants.

### 3. Unfair Business Practices

Plaintiff next raises a claim for "unfair business practices," though he does not specify the statutory basis for such a claim. The Court will assume that Plaintiff intended to raise a claim under California's Unfair Competition Law (UCL). The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

Plaintiff fails to state a claim under any of these theories. To state a claim based on an unlawful business practice, a plaintiff "must allege facts sufficient to show a violation of some underlying law." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014). As discussed above, Plaintiff has failed to adequately plead either of his other claims, and he does not identify any other unlawful conduct that could serve as a predicate.

---

[6] The Court may consider this document on a motion to dismiss, as it was attached as an exhibit to the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As to the unfair prong, Plaintiff must allege that "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006). While Plaintiff has arguably identified an injury, Plaintiff fails to allege any facts showing that "the gravity of the harm to the victim outweighs the utility of the defendant's conduct." *People ex rel. Renne v. Servantes*, 86 Cal. App. 4th 1081, 1095 (2001). Plaintiff has therefore failed to state a claim under this prong.

Lastly, the fraudulent prong requires a showing that "members of the public are likely to be deceived" by Defendants' conduct. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiff here has not alleged any deceptive activity, let alone pleaded sufficient facts to establish, under the heightened pleading standard of Rule 9(b), that a reasonable consumer is likely to be misled by Defendants' actions. Accordingly, Plaintiff has not stated a claim under the UCL.

### 4. Declaratory Relief

Lastly, Plaintiff raises a claim for declaratory relief, seeking various declarations about the legality of Defendants' actions with respect to one- and two-character domain names. Under the Declaratory Judgment Act, a plaintiff must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).

Plaintiff's claim fails for two reasons. First, Plaintiff cannot seek declaratory relief as a standalone claim since all of his underlying claims have been dismissed. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011) (dismissing claim for declaratory relief because "[t]his claim is ultimately a request for relief, and [plaintiff] is not entitled to such relief absent a viable underlying claim"). Second, Plaintiff has not identified any legal entitlement to the relief sought. As discussed above, Plaintiff is not a party to the contract between Defendants and therefore has no standing to enforce its terms

or to seek a declaration as to the legality of its terms. Plaintiff also has not established that he is entitled to any of the domain names that he seeks to have the Court assign to him. Thus, "given that Plaintiff[] [has] not alleged a legal protected interest or right, there is no controversy relating to [his] legal rights." *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 901 (N.D. Cal. 2016). Accordingly, Plaintiff's declaratory relief claim fails.

### C.   Statute of Limitations

In addition to the arguments about Plaintiff's failure to state a claim, Verisign argues that Plaintiff's claims should all be barred by the statute of limitations. Private claims under the Sherman Act have a four-year statute of limitations from the date the cause of action accrued. 15 U.S.C. § 15b. State law claims for breach of contract and unfair business practices are also governed by a four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208; Cal. Code of Civ. Proc. § 337(a). The statute of limitations for declaratory relief depends on the underlying claim but would not exceed four years. *See* Cal. Code of Civ. Proc. § 337(a) (four-year statute of limitations for claims based on breach of contract); *Id.* § 338 (three-year statute of limitations for claims based on fraud or liability created by statute).

As Verisign argues, the basis for Plaintiff's non-contract claims[7] appears to be the denial of his application to register various one- and two-character domain names, which first occurred in 2008. Plaintiff was aware of this denial and of his legal rights, having initiated suit in China in 2008 and having been told by the Chinese court as of at least 2011 that his claims "should be determined by US courts." (FAC at 8-9; ECF No. 7 at 258). Plaintiff explicitly asks for compensation "for reasonable expenses and mental damages incurred in the 16 year lawsuit." (FAC at 22). Because Plaintiff's claims relate to actions that occurred approximately 17 years ago, and because Plaintiff has been aware of the need

---

[7] Plaintiff's breach of contract claim appears to be based on more recent conduct, including agreements from 2019 and 2024, and Plaintiff argues that Defendants have continuously violated the terms of these contracts. (ECF No. 70 at 23). Because the Court has dismissed Plaintiff's breach of contract claim for lack of standing, the Court does not decide whether any such claim would be barred by the statute of limitations.

to bring these claims in United States courts for at least 14 years, it appears from the face of the FAC that Plaintiff's non-contract claims are barred by the statute of limitations.

Plaintiff raises two arguments against application of the statute of limitations. First, he argues in the FAC that the statute of limitations is tolled because one of his cases in China remains pending before an appeals court. (*Id.* at 3). However, Plaintiff has filed multiple suits in China in 2008, 2011, 2014, 2018, and 2020, only one of which he alleges remains pending. (*Id.* at 2). As the California Supreme Court has explained, "a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice." *Wood v. Elling Corp.*, 20 Cal. 3d 353, 359 (1977) (citation omitted). The same is true under federal law. *See O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) ("In instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not toll or suspend the [] limitations period." (internal quotation marks and citation omitted)). Absent such a rule, "an indefinite extension of the statutory period—through successive filings and dismissals—might well result." *Woods*, 20 Cal. 3d at 360. Moreover, California courts have not recognized the doctrine of "cross-jurisdictional tolling" with respect to claims in federal court or other state courts, *see Clemens v. DaimlerChrysler Corp.*, 530 F.3d 852, 860 (9th Cir. 2008), and the Court sees no reason why California courts would do so with respect to foreign jurisdictions. The pendency of an appeal of one of Plaintiff's actions in Chinese court therefore does not toll the entire statute of limitations since 2008.

Second, Plaintiff argues that the doctrine of continuous accrual should apply, allowing him to bring these claims based on Defendants' most recent denial of his application. (ECF No. 70 at 23). Under the theory of continuous accrual, "separate, recurring invasions of the same right can each trigger their own statute of limitations." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013). This doctrine applies "whenever there is a continuing or recurring obligation," such that each new breach of the obligation "may be treated as an independently actionable wrong with its own time limit

for recovery." *Id.* at 1199. In addition to applications in 2008, 2015, and 2019, Plaintiff submitted a new application in 2025 that he argues resets the statute of limitations. (FAC at 2).

The Court finds that the doctrine of continuous accrual does not apply here because Defendants did not repeatedly violate a continuing or recurring obligation. Instead, each denial of Plaintiff's application was merely "a reaffirmation of the original decision not to deal with the plaintiff." *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938 (9th Cir. 1981). In the Ninth Circuit, an act restarts the statute of limitations only if it is "a new and independent act that is not merely a reaffirmation of a previous act" and it "inflict[s] new and accumulating injury on the plaintiff." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987). Because Defendants simply reaffirmed their earlier decision to not register one- and two-character domain names for Plaintiff, the subsequent denials did not inflict any "new and accumulating injury" on Plaintiff.

### D. Leave to Amend

Generally, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Nevertheless, a district court may, in its discretion, deny leave to amend when amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Amendment is considered futile where "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).

The Court finds that leave to amend here would be futile. As discussed above, Plaintiff's non-contract claims are barred by the statute of limitations, as they relate to a denial of Plaintiff's application to register domain names from 2008. *See Platt Elec. Supply v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) ("[B]ecause [plaintiff's] claims are barred by the statute of limitations, any amendments would have been futile."). Amendment of Plaintiff's contract claim would also be futile because Plaintiff is not a party

to the contract and the contract explicitly forecloses claims by third-party beneficiaries. Given the terms of the contract, "no additional facts or allegations could cure the deficiency" as to that claim. *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1074 (9th Cir. 2023). The Court further notes that Plaintiff has previously amended his complaint and has filed a proposed second amended complaint that fails to cure any of the identified deficiencies, further supporting the futility of amendment. *See* (ECF No. 81-2).

The Court also finds that leave to amend is not warranted given Plaintiff's bad faith in these proceedings. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (stating that courts may deny leave to amend due to "bad faith or dilatory motive," among other reasons). Plaintiff has taken numerous bad faith actions in this case: (1) Plaintiff sought default judgment within one week of filing his FAC, without seeking entry of default, and without having served either Defendant; (2) Plaintiff requested sanctions against Verisign prior to serving a copy of the summons and complaint; (3) Plaintiff filed multiple "emergency motions" raising substantially identical arguments, even after the Court rejected those arguments; (4) Plaintiff has repeatedly filed multiple versions of his motions and briefs, including the oppositions mentioned in footnotes 1 and 2; (5) Plaintiff has declined requests to meet-and-confer with Defendants about motions, citing procedural arguments that the Court has rejected; (6) Plaintiff has repeatedly re-raised arguments about service that the Court has previously rejected; and (7) Plaintiff has cited multiple cases to this Court that appear to have been falsely generated by AI. Moreover, as Verisign points out, Plaintiff has been litigating this same dispute in a series of cases for over 16 years in Chinese courts. In addition to this action, Plaintiff initiated a virtually identical action in state court, which was removed and assigned to this Court. *See Zheng v. Internet Corp. for Assigned Names & Numbers*, 25-cv-06124-SPG-AJR (C.D. Cal.). Verisign's counsel also attests that Plaintiff's wife initiated a nearly identical suit in

state court around the same time. *See* (Morris Decl. ¶ 13). On this record, the Court finds that granting leave to amend would not be appropriate.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion and DISMISSES the FAC in its entirety, without leave to amend. Defendants shall file a proposed judgment consistent with this Order on the docket within fourteen (14) days of the issuance of this order.

**IT IS SO ORDERED.**

DATED: September 16, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court dismisses this action without leave to amend, the Court DENIES Plaintiff's motion for leave to file an amended complaint. (ECF No. 81). The Court also DENIES, as moot, Verisign's request for judicial notice, as the Court does not rely on any of the proposed documents. (ECF No. 64).