UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINJIE ZHENG,<br><br>               Plaintiff,<br><br>    v.<br><br>INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS; and VERISIGN, INC.,<br><br>               Defendants. | Case No. 2:25-cv-04808-SPG-AJR<br><br>**ORDER GRANTING, IN PART, DEFENDANT VERISIGN, INC.'S MOTION FOR ATTORNEY'S FEES [ECF NO. 123]** |

Before the Court is the Motion for Attorney's Fees (ECF No. 123 ("Motion")) filed by Defendant VeriSign, Inc. ("Verisign"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS, in part, the Motion.

I.    **BACKGROUND**

Plaintiff Minjie Zheng ("Plaintiff") initiated this action on May 23, 2025, asserting claims for antitrust violations, breach of contract, unfair business practices, and declaratory relief against Verisign and Defendant Internet Corporation for Assigned Names and Numbers ("ICANN," or, together with Verisign, "Defendants"). (ECF No. 1). In brief,

Plaintiff alleged that Defendants illegally restricted the registration of one- and two-character website domain names, even while registering other supposedly reserved domain names, in restraint of trade and in violation of their own agreements. (ECF No. 10 at 3, 22). As relief, Plaintiff sought a declaration that Defendants acted illegally in restricting the registration of one-character and two-character domain names, an order that Defendants register certain one- and two-character .com and .net domain names for him, and an award of expenses and mental damages. (*Id.* at 22).

On September 16, 2025, the Court issued an order granting Defendants' motions to dismiss and denying leave to amend. (ECF No. 104). The Court concluded that amendment would be futile because Plaintiff's non-contract claims were barred by the statute of limitations and because he could plead no additional facts that would adequately state a breach of contract claim. (*Id.* at 14). The Court also found that leave to amend was not warranted because Plaintiff had demonstrated bad faith in the proceedings up to that point. (*Id.* at 15). Specifically, the Court found that Plaintiff had acted in bad faith by (1) seeking premature default judgment; (2) requesting sanctions before serving Defendants; (3) filing multiple "emergency motions" raising substantially identical arguments, even after the Court rejected those arguments; (4) filing multiple versions of the same motions and briefs; (5) declining requests to meet-and-confer, while citing procedural arguments that had been rejected by the Court; (6) repeatedly re-raising arguments about service that the Court had rejected; and (7) citing numerous cases that appeared to have been falsely generated by AI. (*Id.*). The Court entered judgment in Defendants' favor on September 30, 2025. (ECF No. 110).

Verisign filed the instant Motion on October 14, 2025, seeking an award of attorney's fees accrued in preparing certain submissions in response to Plaintiff's filings. (Mot.). The Motion is accompanied by a declaration from defense counsel, as well as dozens of supporting exhibits, primarily consisting of email records between Verisign and Plaintiff. (ECF No. 123-4 ("Morris Declaration")); *see* (ECF Nos. 123-5 – 123-62).

Plaintiff filed an opposition to the Motion on October 21, 2025.[1] (ECF No. 127 ("Opposition")). Verisign replied in support of the Motion on October 29, 2025. (ECF No. 136 ("Reply")). On November 25, 2025, Verisign filed a supplement to the Motion, seeking to recover additional fees that Verisign has incurred since filing the Motion. (ECF No. 151).

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this rule are available based on a "bad faith finding," which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (citation omitted). "The purpose of § 1927 may be to deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012). "District courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). Pro se parties are not excluded from such sanctions. *Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990).

District courts also possess the inherent authority to issue sanctions, including an award of attorney's fees, in response to "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980) (citation omitted). Bad faith

---

[1] Plaintiff also filed a second opposition on October 23, 2025, outside the deadline set by the Local Rules. (ECF No. 129). Plaintiff indicates that he did so to correct certain issues with the initial filing. (ECF No. 131). However, the second opposition contains new arguments, in addition to these corrections. The Court will not consider the new arguments submitted in the second opposition.

1 supporting such sanctions "may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15 (1973). "An award of attorneys' fees for bad faith is within the district court's discretion." *Stitt v. Williams*, 919 F.2d 516, 531 (9th Cir. 1990).

Finally, Local Rule 83-7 provides that "[t]he violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to: (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless; (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or (c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances." C.D. Cal. L.R. 83-7.

## III. DISCUSSION

### A. Plaintiff's Bad Faith

Verisign requests that the Court reaffirm its finding from the Court's dismissal order that Plaintiff has acted in bad faith. (Mot. at 15). Verisign sets out the basis for each of the Court's earlier bad faith findings and argues that Plaintiff's subsequent conduct only reinforces these findings. (*Id.* at 15-22). In opposition, Plaintiff argues that Verisign should be precluded from seeking attorney's fees because it has also acted in bad faith and made material misrepresentations to the Court. (Opp. at 5). Plaintiff also argues that any delays in this case were the fault of the Court, not Plaintiff. (*Id.*).

Having reviewed the parties' arguments and the record in this case, the Court reaffirms its earlier finding that Defendant has acted in bad faith. Of primary concern to the Court is Plaintiff's repeated use of citations to cases and statutes that appear to have been falsely generated by AI. In its order on Defendants' motions to dismiss, the Court noted that "[t]he case law cited in Plaintiff's oppositions and motions appears to be largely AI-generated," and it identified two such cases that the Court was unable to locate. (ECF No. 104 at 7). While Plaintiff has expressed some contrition for his use of unverified, AI-generated citations, his subsequent filings contain the same issues. For example, in filings

on August 29 and September 5, Plaintiff cited dozens of cases that the Court was unable to locate, including some cases falsely attributed directly to this Court. *See* (ECF No. 92 at 18-23; ECF No. 96 at 24-55). For some of the citations that do exist, Plaintiff quotes language that does not appear in the cited orders. *See* (ECF No. 92 at 4-5 (attributing false quotes to *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 901 (N.D. Cal. 2016), and *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973)). Similarly, in Plaintiff's motion to reconsider the Court's dismissal order, Plaintiff quotes language from California Code of Civil Procedure § 356 that bears no similarity to the actual contents of that statute or any of the surrounding statutes. *See* (ECF No. 111 at 10). Even the cases cited in his Opposition to the instant Motion are either entirely fabricated or do not support the proposition for which Plaintiff cites them. *See* (Opp. at 22). To the extent that Plaintiff was unaware of the possibility of AI-generated errors or of his obligation to verify cases cited to the Court, Plaintiff no longer has this excuse following the Court's dismissal order. While Plaintiff is appearing pro se, his pro se status does not excuse his actions. *See* C.D. Cal. L.R. 83-2.2.3; Fed. R. Civ. P. 11(b); *see also Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-cv-04482-YGR (DMR), 2025 WL 2098597, at *3 (N.D. Cal. July 25, 2025) (collecting cases sanctioning pro se plaintiffs for failing to verify the accuracy of AI-generated citations).

The Court is also concerned with Plaintiff repeatedly re-raising arguments about de-facto service despite the Court's rejection of those theories. As Verisign details, Plaintiff has filed at least thirteen separate submissions in which he raises arguments about "de facto service" on Verisign. *See* (ECF Nos. 36, 38, 39, 42, 44, 70, 75, 76, 80, 91, 92, 96, 106). The Court has repeatedly rejected these arguments as frivolous and has warned Plaintiff against re-raising these arguments. *See* (ECF Nos. 37, 46, 104). Even so, Plaintiff has continued to raise these theories in subsequent filings, including in his motion for reconsideration of the Court's dismissal order, in his opposition to the instant Motion, and in miscellaneous filings made thereafter. *See* (Opp. at 4-5, 15-16; ECF No. 111 at 11-17; ECF No. 133). Plaintiff has also repeatedly demanded responses to these arguments on an

expedited basis, necessitating a response. For example, in a filing entitled "Final Notice Regarding Confirmation of Service Validity and Intent to Apply for Default Judgment," Plaintiff indicated that he would file for entry of default against Defendants within four days unless Defendants responded. (ECF No. 75). Verisign responded four days later, arguing that the motion was frivolous and that the Court had already repeatedly rejected the argument on the merits. (ECF No. 79). And in a filing entitled "Plaintiff's Motion to Confirm Defendant's Waiver of Service Defenses and to Strike ECF No. 63 as Untimely," Plaintiff attempted to set a hearing for less than a week, which again prompted a response from Verisign. (ECF Nos. 96, 98). Given the Court's repeated rejection of these arguments, the Court finds Plaintiff's continued filings to be knowingly frivolous.

Also of concern to the Court are Verisign's allegations that Plaintiff has attempted to use further litigation as a threat and that he has instructed others to use AI in preparing future suits. Defense counsel attests that Plaintiff told him that he has instructed five other individuals to "file lawsuits against Verisign in the United States in the coming months regarding registering the domain names at issue in this case." (Morris Decl. ¶ 51). In an earlier filing, defense counsel attested that Plaintiff stated that he has recruited five other individuals and has "explained to them that a person can use AI to help create and format documents to file in U.S. lawsuits." (ECF No. 87-4 at 2). Among the individuals named by Plaintiff is an individual named Hongjie Zhu, who has since filed lawsuits against Defendant in state and federal court. (Morris Decl. ¶ 52; Reply at 8). Plaintiff's wife has also initiated a similar suit that was recently transferred to this Court, and defense counsel attests that Plaintiff has inserted himself into meet-and-confer efforts in that case. (Morris Decl. ¶¶ 35-36). Defense counsel furthers attests that Plaintiff has "threatened to 'send an email to the world about the case and how to sue for single-letter domains,' '[s]eek FRCP 37 sanctions for spoliation of evidence,' and '[f]ile supplemental Bar complaints,'" and that Plaintiff has used the withdrawal of a State Bar complaint as a bargaining chip in negotiations. (*Id.* ¶ 27).

1        The other bases for bad faith identified in the Court's dismissal order also remain valid. As the Court found, Plaintiff (1) sought default judgment within one week of filing his First Amended Complaint and without seeking entry of default or having served either Defendant; (2) Plaintiff requested sanctions against Verisign prior to serving it; (3) Plaintiff filed multiple emergency motions raising substantially identical arguments, even after the Court rejected those arguments; (4) Plaintiff repeatedly filed multiple version of his motions and briefs; and (5) Plaintiff declined requests to meet-and-confer with Defendants about motions, citing procedural arguments previously rejected by the Court. (ECF No. 104 at 15). While Plaintiff's explanations do provide some context for his actions, much of the conduct that the Court warned against has continued. Plaintiff has continued to make duplicative filings, including filing multiple oppositions to this Motion and filing multiple replies in support of his motion for reconsideration. *See* (ECF Nos. 126, 127, 128, 129). Defense counsel also attests to continued issues with the meet-and-confer process, including Plaintiff attempting to impose preconditions unrelated to the subject of the conference before meeting, failing to attend scheduled meetings, and requesting meetings for motions that have already been filed. (Morris Decl. ¶¶ 4, 6, 10, 14, 16, 1731, 34). For all of the above reasons, the Court reaffirms its conclusion that Plaintiff's actions evince bad faith, resulting in an unreasonable multiplication of the proceedings.

       Plaintiff's arguments do not change this conclusion. Plaintiff argues that Verisign is to blame for any duplication in the proceedings because it engaged in bad faith conduct of its own. (Opp. at 7-14). However, much of Plaintiff's purported evidence of bad faith is unrelated to anything that has happened in these proceedings. The Court disagrees that Verisign's conduct in this case has been in bad faith and makes no finding as to actions from other cases. Similarly, Plaintiff's evidence of his own good character has little bearing on the question of his good faith in these proceedings. (*Id.* at 16-17). Next, the Court rejects Plaintiff's argument that Verisign has participated too "deeply" in this litigation. (*Id.* at 14-15). Plaintiff's complaint makes little distinction between Defendants,

and Verisign was entitled to defend itself against the claims brought against it. The Court also rejects Plaintiff's arguments about service of process for the same reasons that it has previously articulated. (*Id.* at 15-16). Finally, while Plaintiff argues that the Court is to blame for providing insufficient guidance on the procedural rules affecting his motions and for entering his filings too slowly onto the docket, (*id.* at 17-20), it is not the Court's role to educate Plaintiff on his procedural obligations. Even as a pro se plaintiff, Plaintiff is required to comply with the Local Rules and Federal Rules of Civil Procedure. *See* C.D. Cal. L.R. 83-2.2.3. Nor is the Court's finding of bad faith premised on any individual procedural violation; rather, it is the repeated and persistent violations, even after admonition from the Court, that necessitate this finding.

### B. Attorney's Fees Award

Having found that Plaintiff acted in bad faith, resulting in an unreasonable multiplication of the proceedings, the Court must next determine the amount of any "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Verisign seeks to recover fees incurred in connection with five filings: (1) the opposition to Plaintiff's Final Notice Regarding Confirmation of Service Validity (ECF No. 79); (2) the opposition to Plaintiff's Motion to Confirm Defendant's Waiver of Service Defenses (ECF No. 98); (3) Defendants' Joint Request for a Status Conference (ECF No. 86); (4) the opposition to Plaintiff's Motion to Alter or Amend the Judgment (ECF No. 125); and (5) the instant Motion. *See* (Mot. at 25). Verisign attests that five different attorneys worked on this case at hourly rates ranging from $1,021.50 for an associate to $1,714.50 for a partner. *See* (ECF Nos. 123-2, 123-3). Including the Supplement to the Motion, Verisign's Counsel attests that it spent a total of 184.2 hours in direct response to Plaintiff's frivolous filings and bad faith actions. (ECF No. 151-1 at 4). Multiplying these figures together, Verisign seeks to recover a total of $212,704.20.

The Court agrees that the five filings identified by Verisign were either necessitated by or multiplied by the bad faith conduct discussed above. The first two filings were made directly in response to Plaintiff's arguments about de facto service of process, which the

Court had already rejected multiple times as of the time of these filings. Verisign does not seek to recover for the initial expense of rebutting Plaintiff's service arguments, only the expenses incurred in addressing new filings re-raising that issue. Similarly, Defendants' joint request for a status conference was filed to address several issues that the Court has identified as bad faith, including submitting multiple versions of the same filing, repeatedly requesting client authorization documents, repeatedly filing motions related to the de facto service theory, and using artificial intelligence to draft filings. (ECF No. 86 at 2-3). Plaintiff's motion to alter or amend the judgment, while not predominantly attributable to any bad faith, included arguments about de facto service, client authorization, and the meet-and-confer process, all of which the Court had already rejected on multiple occasions. Finally, the instant Motion is inherently related to Plaintiff's bad faith and, therefore, attorney's fees are potentially recoverable for this Motion. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985) ("In statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.").

However, the Court finds the requested recovery of $212,704.20 to be excessive. The party seeking an award of fees bears the burden to prove the reasonableness of the requested rates and hours. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In determining an appropriate fee rate, district courts may apply their "knowledge of customary rates and their experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Verisign has not put forth any direct evidence of the prevailing fee rates in this District for attorneys with similar experience levels. Instead, Verisign cites to a handful of cases from this District approving similar rates. While the Court is aware that some courts have approved similar rates, this Court has reviewed attorney's fees requests and supporting documents in other cases and has determined in those cases that lower rates are more reasonable for attorneys who have similar levels of experience as the attorneys in this case. *See, e.g.*, *OWLink Tech., Inc. v. Cypress Tech. Co., Ltd.*, No. 8:21-cv-00717-SPG (KESx), 2023 WL 9061081, at *2 (C.D.

Cal. Dec. 12, 2023) (Garnett, J.) (reducing requested recovery in civil litigation involving large law firm to $1200 for experienced partners and $900 for associates). In the absence of direct evidence of the prevailing rates, the Court will base its award on prevailing rates it has previously found to be reasonable in the community. The Court will therefore reduce the hourly rates as follows: $1,250 for Johnston, $1,150 for Blackburn, $1,000 for Ramallo, and $900 for Coleman and Morris.

The Court also finds the number of hours spent on these filings to be excessive. For example, while Verisign attests that it spent 52.2 hours responding to bad faith arguments in Plaintiff's motion to amend or alter the judgment, *see* (ECF Nos. 123-3, 151-3), the Court finds that these arguments were only a small subset of the overall motion, requiring limited response. And while the Court has identified at least one apparently AI-generated citation in that filing, Plaintiff's reconsideration motion is free from the time-consuming string cites presented in earlier filings. Similarly, given that the first two filings were responsive to arguments that Verisign had already briefed for the Court, the Court finds that a smaller recovery is appropriate. Finally, the Court finds Verisign's request to recover 108.3 hours of fees for preparing the instant Motion and Reply, *see* (ECF Nos. 123-3, 151-3), to be excessive. *See, e.g.*, *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-cv-01130-WHO, 2017 WL 783490, at *16 (N.D. Cal. Mar 1, 2017) (finding that 158 hours spent on attorney's fees motion was "excessive and unreasonable"). Rather than conducting an hour-by-hour examination of Verisign's requested recovery, the Court will apply an across-the-board cut of 25%, resulting in 138.15 hours of recoverable fees. *See United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1108 (9th Cir. 2015) (explaining that courts have discretion to "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application" (citation omitted)). Multiplying these figures together, the Court finds that Verisign reasonably incurred $132,258.75 in fees.[2]

---

[2] The Court calculates this total as follows:
(1) Johnston (5 hours x $1,250 x 75%) = $4,687.50;

Although this amount was reasonably incurred by Verisign, the Court concludes that awarding this amount as a sanction would be excessive in light of Plaintiff's pro se status. As the Court previously noted, § 1927 sanctions are intended to "both compensate and deter." *Haynes*, 688 F.3d at 987. Recognizing that "imposing sanctions in an amount many times greater than the [sanctioned party] will ever be able to pay . . . does little either to compensate victims or to deter future violators," the Ninth Circuit has held that "a district court may, in its discretion, reduce the amount of a § 1927 sanctions award, and may do so, among other reasons, because of the sanctioned [party's] inability to pay." *Id.* at 988. Similarly, the Ninth Circuit has explained in the context of Rule 11 sanctions that "the pro se status of a violator may be relevant to the court's discretionary choice of the appropriate sanction in a given case." *Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989). Here, given Plaintiff's pro se status, a six-figure sanctions award would very likely exceed Plaintiff's means and would be needlessly punitive. Accordingly, the Court will exercise its discretion to further reduce the sanctions award by 50%, to $66,129.38. The Court finds that such an award adequately balances the goals of compensation and deterrence, while taking into account Plaintiff's pro se status.

---

(2) Blackburn (20.5 x $1,150 x 75%) = $17,681.25;
(3) Ramallo (36.9 hours x $1,000 x 75%) = $27,675;
(4) Coleman (84.5 hours x $900 x 75%) = $57,037.50;
(5) Morris (37.3 hours x $900 x 75%) = $25,177.50.
*See* (ECF No. 123-3 at 4; ECF No. 151-3 at 3).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, the Motion. Plaintiff is ORDERED to pay Verisign $66,129.38 in attorney's fees.

**IT IS SO ORDERED.**

DATED: December 23, 2025



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE